IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-50652
Summary Calendar
_____

RUKMINIE HARILALL,

        Plaintiff-Appellant,

v.

UNIVERSITY HEALTH SYSTEM DEVELOPMENT CORP, formerly known as Bexar
County Hospital District, doing business as University Hospital
System, also known as University Hospital,

        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
(SA-97-CV-347)
_____

February 18, 1999

Before KING, Chief Judge, BARKSDALE and STEWART, Circuit Judges.

PER CURIAM:[*]

        Plaintiff-appellant Rukminie Harilall appeals the district

court's award of summary judgment to defendant-appellee

University Health System Development Corp. in this suit alleging

violations of Title VII, 42 U.S.C. 2000e to 2000e-17.  We affirm.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

## I. BACKGROUND

Plaintiff-appellant Rukminie Harilall was employed by defendant-appellee University Health System Development Corp. (UHSDC) as a nurse. Harilall's complaint alleges that during her tenure with UHSDC she was harassed on the basis of her race, color, religion, and national origin, and that UHSDC ultimately terminated her for discriminatory reasons.[1] Harilall filed suit in the district court on March 20, 1997. On June 21, 1998, the district court granted UHSDC's summary judgment motion, dismissing Harilall's claims on the grounds that the conduct complained of did not rise to the level of actionable harassment, that the evidence did not demonstrate that UHSDC management had actual or constructive knowledge of the harassment, and that Harilall's subjective belief that her discharge was the result of discrimination was insufficient to overcome UHSDC's evidence that she had been discharged for a non-discriminatory reason. Harilall timely appealed and appears before this court pro se.[2]

---

[1] Harilall's pro se appellate brief also argues that she was harassed and terminated on the basis of disability, and that UHSDC defamed her after she left UHSDC's employment by reporting to a publishing clearing house that Harilall had been discharged for violating hospital policy when, in fact, she resigned in lieu of termination. Neither allegation appears in her complaint. We therefore will not consider these allegations on appeal. We further note that, although Harilall contends in her appellate brief that she was not terminated, but resigned in lieu of termination, this distinction is irrelevant for purposes of determining whether her employment ended for discriminatory reasons.

[2] Harilall's district court counsel no longer represents her. She now moves for appointment of counsel for purposes of this appeal. We deny her motion. There is no automatic right to the appointment of counsel in a civil case, and Harilall has not

The summary judgment evidence before the district court established the following incidents of alleged harassment:

On one occasion, Harilall's supervisor, Marlene Upright, the Clinical Nursing Director heading the unit where Harilall worked, asked Harilall to work beyond her shift. Harilall replied that she could not because she had to pick up her son and had a class to attend. Harilall did not work beyond her shift and was not disciplined for her refusal.

Approximately two days to one week later, Upright left a message on the answering machine at Harilall's mother's house stating that Harilall was needed at work and that, if she did not report, her job would be in jeopardy. Harilall claims that other nurses had had more time off than she but were not called into work. Harilall went into work as requested. Upright then informed Harilall that she wanted to see Harilall in her office. Harilall stated that she became nervous at this request. In Upright's office, Upright explained that had she not made the phone call, Harilall would not have come to work. Harilall then told Upright that her father and mother had both experienced chest pains upon hearing the message. Harilall contends that Upright yelled at her during this discussion.

---

shown that the appointment of counsel is warranted here. <u>See Salmon v. Corpus Christi Indep. Sch. Dist.</u>, 911 F.2d 1165, 1166 (5th Cir. 1990) (no automatic right to the appointment of counsel); <u>Gonzalez v. Carlin</u>, 907 F.2d 573, 580 (5th Cir. 1990) (factors relevant to whether district court should appoint counsel in Title VII case include (1) merits of claim; (2) efforts taken by plaintiff to secure counsel; and (3) plaintiff's financial resources); <u>Neal v. IAM Local Lodge 2386</u>, 722 F.2d 247, 250 (5th Cir. 1984) (same).

On another occasion, Harilall asked Judy Rodriguez, the assistant head nurse, for time off.  Harilall had gotten someone to cover for her, but Rodriguez wanted to use the person elsewhere.  After being pressed, Rodriguez stated that she would have to clear the time off with Upright.  Harilall eventually received the requested time off, but believes that her request was granted only because she inquired about the Equal Employment Opportunity Commission.

The next incident occurred at the nurses' station, where Rodriguez asked Harilall who she was married to and how many times she had been married.  Harilall stated that she felt that the questions were inappropriate, but admitted that she walked away without saying anything.

The next incident occurred during a break when a co-worker asked Harilall where she and her son came from.  Harilall responded that she had fallen out of a tree because she felt it was none of the co-worker's business.  The co-worker responded by asking Harilall if she wanted to get married to anyone.  After responding in the negative, the co-worker informed Harilall that her husband could introduce Harilall to a "big, fat black man." Another co-worker then asked Harilall where she came from and Harilall again responded by stating that she had fallen out of a tree.  The co-worker stated that she believed Harilall was an illegal alien and was going to prove it.  Harilall contends that during the incident her co-workers were all laughing.  Although Rodriguez was present during the incident, Harilall informed

4

neither Rodriguez, nor her the co-workers, that she felt that the questions were inappropriate. Harilall never reported the incident to Upright or anyone else in management.

Another co-worker subsequently questioned Harilall about her marital status and about her son's father. Yet another co-worker asked Harilall if she had had a "butt uplift." Harilall felt that these questions were inappropriate, but did not tell her co-workers, and never reported the incidents to management.

On a separate occasion, a co-worker asked Harilall if she is a "wetback," and if she knew what the term meant. Harilall never reported the incident to management.

Harilall also testified that she felt harassed when she was asked to provide orientation for a new employee. Harilall felt that she did not have the experience to provide orientation because she was the least senior employee in the unit. The new employee followed Harilall around each day, and, at the end of the day, Upright would ask the employee if she "ha[d] anything for [Upright]." Harilall believed that "she was like spying on me to see if I was doing my work right or something. I felt that at that moment that they were looking for something to fire me."

Harilall stated that she became a nervous wreck because of the above events. On another occasion, she arrived at work and was informed that she had failed to follow the doctor's orders on one of her patients and that Upright wanted to see her. Harilall stated that she felt very nervous and was crying and shaking. She stated that she felt like she needed to talk to someone and

went home. That afternoon, Harilall received a call from Upright who told her that she could not return to work until she had a complete psychiatric evaluation. Plaintiff complied. Upon returning to work, she brought with her a letter from the psychiatrist, which she delivered to Inez Kelly, the head of all nurses. The letter stated that the psychiatrist thought that Harilall had a personality conflict with Upright. After delivering the letter, Harilall informed Kelly of the earlier incident in which Upright had left a telephone message on her mother's answering machine stating that her job would be in jeopardy if she did not come into work. She informed Kelly how upset she had been by the message. Kelly responded by setting up a meeting with Harilall, Upright, and Nancy Ray, the vice-president of Patient Care Services.

During the meeting, Harilall explained her side of the story and her feelings about the incident. Upright explained that the hospital was understaffed and that she had been desperate for help. Ray tried to convince Harilall to learn to work with Upright. Harilall described what Ray told her as follows:

> [Upright] is not going to fire you. She said, and you have to learn to live with her and you work with her and we are not going to fire [Upright] and she was going to have periodic meetings and I felt like I didn't need that periodic meetings because everybody on the floor was harassing me and I needed to be removed from that situation, but I didn't say anything because I had already told Inez Kelly that, that I had decided with my psychiatrist, I had come to a conclusion that if this continue[d] that I was going to resign . . . .

After the meeting, Harilall returned to work. Harilall felt that Upright was "hammering at [her]" because Upright asked her a

6

question. Later that day, Upright informed Harilall that a doctor had called stating that Harilall had not called him with a lab result. Harilall felt she was being set up and decided to prove she was being harassed. She decided to make a copy of the patient's record to show she was being set up. She called the secretary and asked her to make a copy of the chart which she intended to take to an employee representative. After picking up the copy, she decided it was wrong and threw it away. However, she ended up making a second copy and taking it to the employee representative who wadded it up and told Harilall that she was not supposed to copy patients' records. UHSDC contends that Harilall was terminated for removing a copy of the patient's record from the hospital in violation of hospital policy.

## II.  STANDARD OF REVIEW

This court reviews the district court's grant of UHSDC's summary judgment motion de novo, applying the same standard as the district court. See LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 447 (5th Cir. 1996); Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 177 (5th Cir. 1990). If there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. See Fed. R. Civ. P. 56(c); LaPierre, 86 F.3d at 447. Our review is "confined to an examination of materials before the lower court at the time the ruling was made."[3]

---

[3] Appellant's record excerpts contained materials that were not submitted to the district court. Appellee filed a motion to strike the record excerpts. This court granted the motion to

7

<u>Nissho-Iwai American Corp. v. Kline</u>, 845 F.2d 1300, 1307 (5th Cir. 1988).

### III. DISCUSSION

In order to prove that she was subjected to actionable harassment, Harilall must demonstrate (1) that she belongs to a protected class; (2) that she was subject to unwelcome harassment; (3) that the harassment was based on an illegal basis, i.e., her national origin, race, color, or religion; (4) that the harassment materially affected a term, condition, or privilege of employment, i.e., that the harassment was sufficiently pervasive to alter the conditions of employment and create an abusive working environment; and (5) that the employer knew or should have known of the harassment but failed to take prompt remedial action. <u>See</u> <u>Jones v. Flagship Int'l</u>, 793 F.2d 714, 719-20 (5th Cir. 1986); <u>Rogers v. Equal Employment Opportunity Comm'n</u>, 454 F.2d 234, 236-243 (5th Cir. 1971); <u>Ochoa v. Texas Metal Trades Council</u>, 989 F. Supp. 828, 831 (S.D. Tex.

---

strike the appellant's record excerpts on October 1, 1998. On October 12, 1998, appellant moved for reconsideration of the October 1st order. This court denied the motion for reconsideration on November 5, 1998. On November 10, 1998, appellant moved for reconsideration of the court's November 5th order denying her motion for reconsideration. This court denied the motion on December 17, 1998. Appellant submitted a motion for reconsideration, received on December 23, 1998, asking for reconsideration of the December 17th order. This motion was returned to her without being filed. Appellant has now submitted yet another motion for reconsideration which was received on December 30, 1998. We refuse to consider the motion. Materials not presented to the district court are not properly before us and may not be introduced into the record on appeal. <u>See</u> <u>Fields v. City of South Houston</u>, 922 F.2d 1183, 1188 (5th Cir. 1991) (citing <u>John v. Louisiana</u>, 757 F.2d 698, 710 (5th Cir. 1985)).

1997).

The district court properly granted summary judgment because Harilall's evidence does not satisfy the elements of actionable harassment. Of the incidents recounted by Harilall, the vast majority are common workplace occurrences, and Harilall has not established they were based on her national origin, race, color, or religion. While "wetback" and "illegal alien" are comments related to Harilall's national origin, these isolated remarks do not constitute pervasive harassment actionable under Title VII. The "'mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee' does not affect the terms[,] conditions, or privileges of employment to a sufficiently significant degree to violate Title VII." Jones, 793 F.2d at 720 (quoting Rogers, 454 F.2d at 238); see Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2283 (1998) ("'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'") (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 S. Ct. 998, 1003 (1998)) (citation omitted).

Moreover, Harilall has not presented evidence that UHSDC knew or should have known of the alleged harassment but failed to take prompt remedial action. Harilall admitted to the district court that she did not report the vast majority of incidents to

9

management.[4] While, in the meeting set up by Kelly with Harilall, Upright, and Ray, Harilall did express her distress at the phone message asking her to come into work left by Upright on Harilall's mother's answering machine, this did not provide UHSDC with notice that Harilall felt that she was being harassed on the basis of her national origin, race, color, or religion. UHSDC, therefore, did not have actual notice of her claims of harassment. See Waltman v. International Paper Co., 875 F.2d 468, 478 (5th Cir. 1989) (actual notice established by evidence of complaints to higher management).[5] Nor was the harassment sufficiently pervasive to provide constructive notice. See id. (constructive notice shown where pervasive harassment exists that gives rise to inference of knowledge or constructive knowledge). The district court correctly granted summary judgment to UHSDC as to Harilall's claim of harassment on the basis of her national origin, race, color, or religion.

As to Harilall's claim that she was terminated for discriminatory reasons, Harilall must first establish a prima facie case of discrimination. If she does so, UHSDC must articulate a legitimate, non-discriminatory reason for her termination. Once UHSDC has met its burden, Harilall must

---

[4] In her pro se appellate brief, Harilall contends that she did report the incidents to John Guest, CEO of the hospital. There is no evidence in the record to support this assertion.

[5] Rodriguez's presence during one incident in which Harilall was referred to as an "illegal alien" and questioned as to where she came from does not demonstrate that UHSDC had actual knowledge of pervasive harassment being directed against Harilall on account of her national origin, race, color, or religion.

prove, by a preponderance of the evidence, that UHSDC's articulated reason is false and that the defendant intentionally discriminated against her.  See Walton v. Bisco Indus., Inc., 119 F.3d 368, 370 (5th Cir. 1997) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-55 (1981)); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) (establishing burden-shifting framework).

To establish a prima facie case of discriminatory discharge under Title VII, the employee must demonstrate (1) that she is a member of a protected class; (2) that she was discharged; (3) that she was qualified for the position from which she was discharged; and (4) that she was replaced by a member of an unprotected class.  See Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 318 (5th Cir. 1997).  Assuming arguendo that Harilall has established a prima facie case of discriminatory discharge, the district court nevertheless properly granted summary judgment to UHSDC because UHSDC articulated a legitimate, non-discriminatory reason for Harilall's discharge--that she removed a copy of a patient's record in violation of hospital policy--and Harilall failed to meet her burden of demonstrating that this reason was pretextual and that UHSDC intentionally discriminated against her.  Harilall's conclusory allegations are insufficient to rebut UHSDC's articulated non-discriminatory reason for her discharge. As the district court noted, "[i]t is more than well-settled that an employee's subjective belief that [s]he suffered an adverse

11

employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason." <u>Douglass v. United Servs. Auto. Assoc.</u>, 79 F.3d 1415, 1430 (5th Cir. 1996). The district court, therefore, properly granted summary judgment to UHSDC.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.